UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETER CAMERANO, Personal Representative of the Estate of Patrick Camerano,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES of AMERICA,<br><br>Defendant. | Civil Action No.<br>15-13075-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

**SAYLOR, J.**

This is an action for negligence and wrongful death under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. Plaintiff Peter Camerano is the personal representative of the estate of Patrick Camerano, his late father. The complaint alleges that negligence by personnel employed by the East Boston Neighborhood Health Center ("EBNHC"), a federal facility, resulted in the death of Patrick Camerano.

The complaint was filed on August 3, 2015. It named as defendants East Boston Neighborhood Health Center Corporation; East Boston Neighborhood Health Center; and various individual healthcare providers. In November 2015, defendants moved to dismiss the claims against the individual defendants and for an order deeming this action to be an action against the United States because the individual defendants were federal employees at the time of the alleged acts.

On February 8, 2016, the Court allowed the substitution of the United States as defendant in place of the individually named defendants pursuant to 28 U.S.C. § 2679(d). The United States has now moved to dismiss the claim on the ground that plaintiff failed to file an administrative claim within two years as required by the FTCA. Plaintiff has opposed the motion and has filed a motion to amend to add a new claim against a former individual defendant.

At oral argument, the parties agreed that the motion to dismiss should be converted to a motion for summary judgment. For the reasons described below, defendant's motion for summary judgment will be granted, and plaintiff's motion to amend will be denied.

**I.     Background**

    **A.     Factual Background**

Except where otherwise noted, the following facts are either undisputed or taken in the light most favorable to the plaintiff.

Peter Camerano is the son of the late Patrick Camerano and the personal representative of his estate. (Camerano Aff. ¶ 1–2). As of January 2012, Patrick was a residing at Eastpointe Nursing Home after a surgery. (*Id.* at ¶ 6). In February, Patrick was transferred from Eastpointe Nursing Home to EBNHC for medical management, caregiver respite, and medication management. (Am. Compl. ¶ 11). EBNHC personnel were made aware that Patrick had a recent history of a left hip fracture and a fall. (*Id.* at ¶ 13). According to the complaint, EBNHC did not provide Camerano with "interventions or plans for limiting his wandering behavior." (*Id.* at ¶ 17). The complaint further alleges that EBNHC did not provide "a safety plan including proper monitoring by staff and proper motion sensing alarm systems." (*Id.* at ¶ 18).

On February 26, 2012, at approximately 3:00 a.m., Patrick was walking in the hall of

EBNHC.  (*Id.* at ¶ 21).  While in the hall, Patrick fell and struck the back of his head.  (*Id.* at ¶ 20).  The fall was not witnessed.  More than 24 hours after the fall, Patrick showed signs of distress and was hospitalized at the Boston Medical Center on February 27, 2012.  (*Id.* at ¶ 24).  About February 28, Peter received a call from a nurse at EBNHC who told him that his father had an accident and had been hospitalized.  (Camerano Aff. ¶ 10).  When Peter asked what happened, the nurse said that Patrick had fallen, but she was "not totally sure."  (*Id.*).

At the hospital, doctors diagnosed a subdural hematoma, (Am. Compl. ¶ 25), which they determined was likely inoperable on account of Patrick's advanced age, (*Id.* at ¶ 26).  Peter conferred with the doctors and decided not to proceed with an operation, but to move Patrick to palliative care.  (Def. Mem. Ex. 5).  Patrick was discharged and taken to hospice care at Eastpointe Nursing Home, where he died on March 1, 2012.  (Camerano Aff. ¶ 13).  The cause of death was listed on the death certificate as a "subdural hemorrhage" that resulted from an "unwitnessed fall" at a "respite facility" at "26 Sturgis Street, Winthrop, MA."  (Def. Mem. Ex. D).

In June 2012, Peter requested medical records from EBNHC.  (Pl. Mem. Ex. 1 ¶ 15).  According to Peter, he did so "not knowing where my father was when he was injured."  (*Id.*).  He further stated that "[a]fter reading the records, it was unknown to me what respite/nursing home my late father was in when he was injured."  (*Id.* ¶ 16).

On August 29, 2012, Peter, along with counsel, signed a voluntary administration statement for the Massachusetts Probate and Family Court.  Among the listed assets of the probate estate was a "[w]rongful death action regarding [a] nursing home facility."  (Pl. Mem. Ex. 4).

On September 21, 2012, Peter Camerano became the administrator of Patrick's estate,

which "authorize[ed] him to obtain medical records concerning the care and treatment of the deceased." (Am. Compl. ¶ 29). Peter contends that he received "medical records concerning the Defendant'[s] care of the deceased" on October 29, 2012. (*Id.* at ¶ 30). He further contends that after reviewing the records with counsel he learned for the first time that the accident happened at EBNHC. (Camerano Aff. ¶ 18).

### B.     Procedural Background

On July 16, 2014, Peter filed an administrative complaint with the United States Department of Human Health and Services. On August 3, 2015, he filed a complaint with this Court. The complaint named as defendants East Boston Neighborhood Health Center Corporation; East Boston Neighborhood Health Center; James Pedulla, M.D.; Diane M. Maraio, L.P.N.; Pamela Woo, R.N.P.; Michelle Stimpson, R.N.; and Nancy Segal, R.N.P. On February 8, 2016, the Court dismissed the claims against the original defendants and substituted the United States as the proper party.

The United States has moved to dismiss the complaint, contending, in substance, that the FTCA claim was untimely because it was not filed within the two-year FTCA limitations period, and that the only proper remedy available to plaintiff is through the FTCA. The government submitted various documents outside the pleadings with its motion to dismiss. At the motion hearing, the parties agreed that the Court could convert the motion into a motion for summary judgment and that no further briefing or evidentiary submission was necessary. *See* Fed. R. Civ. P. 12(d).

## II.     Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

### III. Analysis

The United States contends that the claims against it must be dismissed for failure to present an administrative claim to the proper agency within the two-year presentment period required by 28 U.S.C. § 2401(b).

#### A.    Count Two:  Wrongful Death

##### 1.    Claim Accrual

Peter Camerano filed an administrative tort claim with HHS on July 16, 2014.  The claim is therefore barred by the two-year limitations period of the FTCA if it accrued before July 16, 2012.  *See* 28 U.S.C. § 2401(b).  The negligence and wrongful death claims result from the

circumstances around Patrick's fall and subsequent death, which occurred between February 26 and March 1, 2012.

The claim is, in substance, a claim for medical malpractice. Generally, a claim for medical malpractice or other tort accrues "at the time of the injury." *Donahue v. United States*, 634 F.3d 615, 623 (1st Cir. 2011). However, under the "discovery rule," a claim accrues when the plaintiff "knows or reasonably should have known the factual basis for [the] claim; that is, the existence of [the] injury and its cause." *Id.*

In medical malpractice cases brought under the FTCA, "the 'discovery rule' may delay accrual until a plaintiff knows (or reasonably should know) both that he is injured and what caused his injury; it does not, however, postpone accrual until a potential plaintiff also learns that his injury was negligently inflicted." *Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014). For accrual to be delayed, "the factual basis for the cause of action must have been inherently unknowable [that is, not capable of detection through the exercise of reasonable diligence] at the time of the injury." *Id.* (alteration in original)(quoting *Gonzalez v. United States*, 284 F.3d 281, 288-89 (1st Cir. 2002)). "Once a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/she was wronged and should take legal action." *Id.* (quoting *Gonzalez*, 284 F.3d at 289).

The discovery rule "incorporates an objective standard." *Id*. It thus charges a plaintiff not only with what he actually knew about his injury, but also with "what a reasonable person, once fairly prompted to investigate, would have discovered by diligent investigation." *Litif v. United States*, 670 F.3d 39, 44 (1st Cir. 2012); *Rakes v. United States*, 442 F.3d 7, 20 (1st Cir. 2006) (noting that the court must determine "what such an investigation would likely have revealed").

Accrual of a medical malpractice claim under the discovery rule is not delayed until the plaintiff learns the full extent of his injury or that the allegedly negligent actor was a government employee.  *See Gonzalez*, 284 F.3d at 289; *accord Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003).

### a. Knowledge of Injury

Peter does not dispute that he knew of Patrick's injury as of March 1, 2012.  Peter contends that on or about February 28, 2012, he received a telephone call from a nurse at EBNHC who told him that Patrick was hospitalized after he fell.  (Camerano Aff. ¶ 10).  He then transferred Patrick to Easpointe Nursing Home where he died on March 1, 2012.  (*Id.* at ¶ 13).

### b. Knowledge of Cause of Injury

Peter contends that he did not discover the "manner, location, and cause of death" until October 2012.  (Opp. Mem. at 5).  He contends that the delay in discovery was because EBNHC did not produce a complete set of records, and because Nurse Woo did not explain during the February 28 telephone call where Patrick fell or under what circumstances the fall occurred.  (Opp. Mem. at 6).  He further contends that his inability to discover the location of Patrick's fall prevented him from ascertaining the cause of the injury, and that the cause of injury was, therefore, "inherently unknowable."  He alleges that it was only after he received a partial set of medical records in October 2012 that he, along with counsel, was able to determine the name of the facility in which Patrick's injury took place.  He contends that the accrual date for the claim is thus October 29, 2012.[1]

For a plaintiff to have acquired sufficient knowledge of the cause of injury to trigger

---

[1] Peter's claim that the matter was "inherently unknowable" until October 2012 is at least somewhat belied by the fact that he signed a statement to the Probate Court on August 29, 2012, listing as an asset of the estate a "[w]rongful death action regarding [a] nursing home facility."  (Pl. Mem. Ex. 4).

accrual, the plaintiff must have had at least some knowledge of the injury. *Cutting v. United States*, 204 F. Supp. 2d 216, 224 (D. Mass. 2002). However, the plaintiff has the burden to investigate the matter if he has "some reason to suspect foul play." *Id*. The burden on the plaintiff is significant in cases where the injury is death. *Id*. Here, Peter knew that Patrick's death was a result of the fall and resultant head injury. Peter knew those facts no later than March 1, 2012, and thus knew the cause of injury on that date. That date is therefore the date on which the claim accrued.

Furthermore, and in any event, Patrick's death certificate was issued on May 24, 2012. (Def. Mem. Ex. 4). The death certificate indicates that Patrick's cause of death resulted from an injury sustained by an unwitnessed fall at a respite facility located at "26 Sturgis Street, Winthrop, MA"—EBNHC's address. (*Id.*). By May 24, 2012, Peter could have readily become aware of the location of the injury and the fact that the fall had not been witnessed.

Thus, the accrual date is March 1, 2012, and in any event no later than May 24, 2012. Peter "bore the responsibility of both inquiring among the medical and legal communities to determine whether [he] had an actionable claim and bringing any such claim within the statutory period." *Gonzalez v. United States*, 284 F.3d at 290. He had two years in which to do so. Because he did not bring a claim within that period, the claim is time-barred.

### c.     Equitable Tolling

The doctrine of equitable tolling may apply when a plaintiff cannot discover facts sufficient to plead a cause of action after exercising reasonable diligence. *See Abdallah v. Bain Capital, LLC*, 752 F.3d 114, 120 (1st Cir. 2014). Peter contends that the location of Patrick's fall was unknowable until October 29, 2012 and, thus, the accrual date should be tolled. He further contends that the accrual date should be tolled because defendant fraudulently concealed material

facts, which caused the delay in filing.

For a claim of concealment to result in equitable tolling, the concealment must have been fraudulent and deliberate. *Bennett ex rel. Estate of Bennett v. United States*, 429 F. Supp. 2d 270, 281 (D. Mass. 2006). Here, Peter contends that EBNHC fraudulently and deliberately concealed material information when EBNHC failed to disclose Patrick's complete medical records and to inform Peter of the facts concerning Patrick's care. But there is no evidence of actual concealment; for example, there is no evidence that documents were hidden or destroyed or that false representations were made to plaintiff. Nor was the evidence inaccessible or inherently unknowable. At most, Peter contends that "it was unknown to [him]" where the fall had occurred after he read the EBNHC records in June 2012, and that Nurse Woo told him she was "not totally sure what happened." That evidence is a far cry from evidence of a fraudulent and deliberate concealment. As set forth above, in the spring of 2012, Peter had sufficient information to know of the nature of the injury, its cause, and its location. Therefore, the claim of fraudulent concealment does not prevent the claim from being barred by two-year limitations period of the FTCA.

### B.     Count One:  Negligence

The complaint alleges that EBNHC was negligent in its care for Patrick and that negligence was the proximate cause of Patrick's injuries and death. That claim is also brought under the FTCA. Because the negligence claim accrued no later than May 24, 2012, the action is time barred by the FTCA's two year limitations period.

### C.     Count Three:  Breach of Implied Covenant

Peter contends that EBNHC breached the implied covenant of good faith and fair dealing that is inherent in all contracts. He contends that breach of the implied covenant constitutes a

cause of action against the United States through the so-called "Little" Tucker Act, 28 U.S.C. § 1346.  He contends that Count Three is not time-barred because contract claims that are less than $10,000 are not barred if they are filed within six years of the accrual date.  *Id*.

The "Little" Tucker Act does not provide a cause of action here.  In order to bring a claim under that statute, the claim must be a contract claim "not sounding in tort."  28 U.S.C. § 1346.  A claim for breach of contract "sound[s] in tort" when the breach relates to obligations that arise from tort law and not a contractual agreement.  *See Phu Mang Phang v. United States*, 388 F. App'x 961, 963 (Fed. Cir. 2010).  Furthermore, the statute does not establish a separate cause of action; instead, the plaintiff must point to a substantive source of law that permits recovery of money from the United States for the alleged injury.

Here, the complaint alleges that EBNHC had a "duty to provide reasonable, necessary and competent services to the deceased under Massachusetts Law." (Compl. ¶ 48).  Peter further contends that EBNHC breached the duty of care by failing to provide adequate staff to meet the standard of care. These contentions do not arise from a contractual agreement, implied or express; instead, they allege negligence.  Thus, the underlying claim is a tort claim, not a contractual claim.

Because Count Three alleges a claim "sounding in tort," the claim is not properly brought under the "Little" Tucker Act and must be brought under the FTCA, the exclusive remedy for tort actions against the United States.  *See Stevens v. United States*, 2013 WL 151715, at *3 (Fed. Cl. Jan. 14, 2013) ("[T]his court does not possess jurisdiction over any kind of tort claim, including claims 'framed under non-tort law' where 'the essence of the claim lies in tort.'"(citations omitted)).  Count Three will therefore be dismissed.

### D.     Count Four: Violation of 42 U.S.C. § 1983

Count Four alleges that the conduct of EBNHC violated the standards set out in 42 U.S.C. § 1396r.[2] Peter further contends that EBNHC's violation of 42 U.S.C. § 1396r establishes a basis to bring a claim under 42 U.S.C § 1983. The § 1983 claim will be construed as a *Bivens* claim, the federal analog to § 1983.[3]

In order to bring a *Bivens* claim, the plaintiff must allege that the defendants (1) are federal agents (2) who violated plaintiff's constitutional rights (3) while acting under the color of federal law. *See Bivens v. Six Unknown Named Agens of Federal Bureau of Narcotics*, 403 U.S. 388, 391-92 (1999). However, the FTCA is the exclusive remedy for any action against an "employee of the Public Health Service while acting within the scope of his office or employment . . . ." 42 U.S.C. § 233(a). The Supreme Court in *Hui v. Castaneda* interpreted § 233(a) as "grant[ing] absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." 559 U.S. 799, 806 (2010). Because the FTCA is the exclusive remedy for a civil action against a Public Health Service employee, the Court does not have jurisdiction to hear a *Bivens* claim asserted against EBNHC or Public Health Service employees.

### E.     Plaintiff's Motion to Amend

In his opposition brief, Peter moved to add Nurse Woo as an individual defendant for the *Bivens* claim. Fed. R. Civ. P. 15 provides that a party may amend its pleading only under certain

---

[2] Title 42 U.S.C. §1396r(b)(1), (b)(2), (c), and (d)(4) establishes a standard of care nursing home facilities must provide for patients.

[3] A purported claim under § 1983 claim for violation of an individual's constitutional rights should be interpreted as a *Bivens* claim when the accused official is a federal official. *See Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013).

circumstances.  If the pleading is one to which a responsive pleading is required, a party may amend its pleading as a matter of course within 21 days of the service of the responsive pleading or service of a motion under Fed. R. Civ. P. 12, whichever is earlier.  Fed. R. Civ. P. 15(1)(B).  After that time, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In determining whether to grant a motion to amend, the Court must "examine the totality of the circumstances and [ ] exercise its informed discretion in constructing a balance of pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006) (citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)).  However, leave to amend may be denied for several reasons, including, *inter alia*, "futility of amendment."  *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009).

When considering an opposition to a motion to amend on the grounds that amending the complaint would be futile, the court must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *Kenney v. State Street Corp.*, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011).  Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  A claim is plausible on its face if it raises a right to relief beyond a speculative level by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the court will generally accept all well-pleaded factual allegations in a complaint as true and draw all reasonable inferences in a plaintiff's favor, *id.*, the Court will disregard any "legal conclusion[s] couched as . . . fact" or "[t]hreadbare recitals of the

elements of a cause of action." *Ocasio-Hernadez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Peter contends that Nurse Woo violated his rights when she allegedly concealed material facts during his telephone call with her, which caused a delay in the filing of the original complaint. Nurse Woo, however, is a Public Health Service employee and was acting within the scope of her duties at the time of the telephone call. (Def. Mem. Ex. B). For the reasons stated above, a *Bivens* claim is not appropriate, and therefore the motion for leave to amend will be denied as futile.

### IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss, treated as a motion for summary judgment, is GRANTED. Plaintiff's motion for leave to amend is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 7, 2016                                                          United States District Judge